UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARIA SALVADOR HERNANDEZ, | ) | No. CV 13-07755-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

|   |   |   |
|---|---|---|
| 1 |  | evaluated Plaintiff's credibility; |
| 2 | 2. | Whether the ALJ properly weighed the opinions of Plaintiff's |
| 3 |  | treating physician, Dr. Vazquez; and |
| 4 | 3. | Whether the ALJ erred in determining Plaintiff's residual |
| 5 |  | functional capacity. |

(JS at pp. 2 and 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE FLAWED CREDIBILITY FINDING BY THE ALJ MANDATES**

**REVERSAL AND REMAND FOR A NEW HEARING**

On June 29, 2009, Plaintiff had open heart surgery in which her aortic valve was replaced. (AR 159-162.) She had also been diagnosed prior to the surgery with a severely dilated left ventricle, which was not repaired during the surgery. (AR 163-164.)

Following the heart surgery, Plaintiff was treated by several physicians. Dr. Mukhergee functioned as Plaintiff's treating cardiologist from the time she was admitted to the hospital for heart surgery through October 31, 2011. (AR 166-170, 307-313.) During his treatment of Plaintiff, Dr. Mukhergee noted that Plaintiff stated she feels tired (AR 170); that she had occasional dizziness (AR 169); that she feels a "hot flash" when walking and had occasional dizziness and felt fatigue (AR 167, 311); that she complained of fatigue after her surgery (AR 166); that she indicated she feels "tired for five months

all the time" (AR 313); that she was walking and complained of having dizziness (AR 308); and that she was tired and dizzy and had increased blood pressure (AR 320).

Dr. Vazquez functioned as Plaintiff's primary care physician, treating her before and after her open heart surgery, from June 27, 2008 through November 17, 2011. (AR 188-270, 316-368.) After the surgery, on July 28, 2009, Plaintiff presented to Dr. Vazquez with complaints of fatigue and dizziness, and he diagnosed her with "easy fatiguability and dizziness." (AR 205.) Further, on March 31, 2010, Dr. Vazquez documented that Plaintiff became dizzy if she was doing too much exercise, defined as more than 10 to 15 minutes. (AR 195.) On July 21, 2010, Dr. Vazquez reported that Plaintiff gets tired if she is driving (AR 190), and on September 16, 2010, Dr. Vazquez reported that Plaintiff's fatigue occurred with less than five minutes of ambulation; and that she brings her children to school one way for five minutes and then comes back. (AR 189.) On November 3, 2010, Dr. Vazquez indicated that when she bent down to get her slippers felt dizzy, fell to the floor and fell asleep. (AR 188.) On November 18, 2010 Dr. Vazquez indicated that Plaintiff was easily fatigued; that this fatigue was chronic and exacerbated or accompanied by prolonged walking; and was relieved with rest. The documentation by Dr. Vazquez of Plaintiff's dizziness continued on January 25, 2011 and February 11, 2011. (AR 331, 332.) On February 22, 2011, Dr. Vazquez indicated that Plaintiff had complained of fatigue since her 2009 surgery, and diagnosed her with fatigue with an unclear cause. (AR 333.) On April 11, 2011, Dr. Vazquez indicated that Plaintiff was doing well except for occasional dizziness when she walked (AR 328), and he advised her to walk 10 to 15 minutes. (AR 328.) On May 24, 2011, Dr. Vazquez

reported that Plaintiff had intermittent shortness of breath and that she fatigued easily since her surgery. (AR 326.) Finally, on November 11, 2011, Dr. Vazquez reported that Plaintiff continued with episodes of extreme fatigue and dizziness, and he diagnosed "fatigue - multi factor." (AR 316.)

A hearing occurred before the ALJ on March 14, 2012. (AR 30-48.) During this brief proceeding, substantial testimony was taken from Plaintiff concerning her activities of daily living. She indicated she sometimes takes her children to school but not to after school activities. (AR 36.) She and her husband do talk with their neighbors and socialize "but not like we did before," because she gets tired very easily. (AR 37.) When the ALJ said, "So if I understand it, you take care of the house and the children and the cooking and the cleaning and the laundry," Plaintiff disagreed, saying that she only cooks when she can; her daughters do the cleaning because they are in high school; she sometimes starts cleaning but then gets tired, and her daughters finish it; that she no longer can take her sons to football practice; that after her surgery she got very tired, including while she was driving, and that this persists; that she gets fatigue and dizziness symptoms at least four days a week and they are "very, very severe;" that the only medicines the doctor gives her are for anxiety, but that makes her fatigued even further. She naps sometimes twice a day for up to an hour or an hour and a half; her cousin brought her to the hearing; she does not have the strength to successfully wash dishes or easily lift even a gallon of milk; she gets tired when she walks, and she has to sit down and lift up her legs because they get swollen; Dr. Vazquez told her to elevate her feet and keep them level for 15 or 20 minutes; she can only walk about

4

half a block before she has to stop; and that she can only sit down for a short time and then has to begin standing up frequently after 15 to 30 minutes. (See, generally, AR 35-43.)

Plaintiff's general treating physician, Dr. Vazquez, stated in a questionnaire that, among other things, Plaintiff can walk a half-block without rest or severe pain; that she can sit for up to 30 minutes at a time; that she can only stand for 15 minutes at a time; that she can sit less than two hours in an eight-hour work day; that she would sometimes need to take unscheduled breaks during an eight-hour work day; that she can rarely lift less than 10 pounds and never more than 10 pounds; and that she would likely be absent from work more than four days per month. (AR 302-305.) At the hearing, testimony was taken from a Vocational Expert ("VE"). The ALJ posited a hypothetical question that limited the individual to sedentary work with certain additional limitations. The VE then identified available jobs within these restrictions. (AR 45-46.) In response to questions posed by Plaintiff's attorney, which posited additional limitations, including the necessity to have her legs elevated 40% of the time, the VE indicated there would not be any available work. (AR 46-47.)

In the decision, the ALJ made credibility findings as follows:

"The claimant is found to be partially credible because she has some limitations, but not to the extent alleged."

(AR 18.)

This finding was followed by specific reasons upon which it was based, identified as the following:

"(1) the medical evidence records do not support Plaintiff's allegations of such extreme fatigue; Plaintiff has

>    engaged in a somewhat normal level of daily activity
>    and interaction; despite Plaintiff's allegations, she
>    traveled to Mexico in 2011; and although she alleged
>    difficulty concentrating, the ALJ observed that this
>    was not the case at the hearing."

(AR 18.)

The Court need not extensively discuss the regulations and case law which govern credibility assessment, as this is perhaps the most common issue presented in Social Security litigation. A brief overview will suffice. First, 20 C.F.R. § 404.1529(a) allows consideration of the extent to which objective medical evidence supports pain complaints. This includes consideration of a claimant's statements about pain, although these statements alone are not determinative of disability. The regulations also recognize that symptoms may suggest a greater severity of impairment than can be shown by objective medical evidence alone. See 20 C.F.R. § 404.1529(c)(3).

Apart from consideration of objective medical evidence as one factor, the regulations mandate consideration of other evidence which is listed and includes daily activities; location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medication and its side effects; treatment; and any other measures used to relieve pain. See 20 C.F.R. § 404.1529(c)(3)(I)-(vii). The Court's review of credibility findings assesses whether substantial evidence supports the articulated reasons set forth by the ALJ. Thus, the Court will review only the credibility assessment factors cited by the ALJ in the decision.

First, regarding objective medical evidence, the ALJ's summary

and evaluation as set forth in the Decision do not accurately encompass the overall chronological record. Apart from noting that after surgery she was at times doing "extremely well," and that she was maintained on "routine and conservative treatment with medication management," the ALJ failed to accurately characterize these records, which, in fact, seem to document a continuous course of fatigue and dizziness, with accompanying functional effects, from just after the 2009 heart surgery, continuing through late 2011. With regard to the ALJ's reliance on Plaintiff's receipt of "routine and conservative care," there is no evidence in the record, such as from a testifying medical expert, that there might have been more aggressive treatment, whether by medication or otherwise, which could have alleviated Plaintiff's pain and fatigue. Thus, the ALJ's reliance on this factor amounts to a lay opinion which is not entitled to substantial weight. Moreover, despite the Commissioner's argument that, if it existed, Plaintiff's hypertension and diabetes were present because she had not properly taken medications (see JS at 14, et seq.), this factor was not mentioned in the ALJ's decision, and thus cannot be relied upon by the Commissioner, much less the Court, in evaluating whether the ALJ's determination was supported by substantial evidence. It is only evidence relied upon by an ALJ that can be considered in this litigation. Moreover, the Court must look to the articulated reasons to determine if they are "specific, clear and convincing reasons." See Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009); Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007).

    The ALJ's reliance upon Plaintiff's activities of daily living is similarly misplaced, because, quite simply, he overstated what she is able to do on a daily basis. This is apparent from the question which

he posed at the hearing (see AR 37), and the ensuing testimony in which Plaintiff, as it turns out, unsuccessfully attempted to correct the ALJ's perception of the extent of her daily activities. This was made extremely clear in the examination of Plaintiff by her attorney. (AR 38-43.) The record as it exists does not support an inference that Plaintiff's activities of daily living rise to a level transferable even to sedentary work skills.

The third of four reasons cited by the ALJ is that Plaintiff was able to travel to Mexico in 2011. (AR 18.) Standing alone, there is no way to determine if this constitutes substantial evidence to be utilized in the credibility evaluation process, since there was no testimony whatsoever on this issue, and thus no way to determine the reason for the trip. What does appear in the record, however, is that while in Mexico, on August 10, 2011, Plaintiff sought care from a cardiologist. (AR 293-300, 421-435.) These records indicate that Plaintiff reported to the Mexican medical facility with very high blood pressure readings. Her medications were adjusted. All in all, without more, the Court finds that this credibility assessment factor could not be relied upon because of the lack of any further specific information.

The final reason cited by the ALJ in finding Plaintiff not credible was that, despite her testimony that she had difficulty concentrating, he observed otherwise during the approximately 31 minute hearing. (AR 31.) Plaintiff's counsel describes this as disfavored "sit and squirm" jurisprudence, citing Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985). While there is certainly case law that does allow an ALJ to rely on some observations of a claimant at a hearing, in this case, the hearing was extremely brief,

and the Court does not perceive that whether or not the ALJ felt that Plaintiff was able to concentrate on the questions and answers at the hearing have a causal relationship to her complaints of fatigue and pain.

For the foregoing reasons, this matter will be remanded for a new hearing and at that hearing, Plaintiff's credibility will be assessed de novo.

## II

### THIS MATTER MUST ALSO BE REMANDED SO THAT THE OPINION OF TREATING PHYSICIAN DR. VAZQUEZ CAN BE EVALUATED DE NOVO

The Court has already summarized in this Memorandum Opinion the treatment record of Dr. Vazquez over a period of approximately three years. In the ALJ's decision, however, the opinion of Dr. Vazquez was given little weight, "because it is not supported by objective evidence and it is inconsistent with the record as a whole." In particular, the ALJ rejected the Questionnaire of October 27, 2011, which has been partially summarized by the Court in this Memorandum Opinion, as being inconsistent with objective findings; inconsistent with the course of treatment pursued by Dr. Vazquez; and inconsistent with Plaintiff's activities of daily living. (See AR at 20.)

It is well recognized that Dr. Vazquez' opinion should be given special weight as a treating physician, although it is not mandated that it be accepted by the ALJ. If the opinion is depreciated, as it was in this case, however, the ALJ must make findings based on specific and legitimate reasons from evidence in the record. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

Much of the Court's discussion here incorporates its findings and

conclusions with regard to the first issue that concerns the assessment of Plaintiff's credibility. In particular, as the Court has already noted, Dr. Vazquez routinely reported that after her surgery, Plaintiff had fairly consistent symptoms of fatigue and pain, which had serious functional effects. The ALJ faulted Dr. Vazquez for failing to provide an explanation for the functional limitations assessed in the Questionnaire of October 27, 2011; however, this conclusion effectively bypasses the fact that subjective pain and fatigue, which Dr. Vazquez assessed, constituted a foundation for the functional assessments. Consequently, if these subjective symptoms are to be accepted, this would likely impact the evaluation of Dr. Vazquez' opinion. As the Court has already found, Plaintiff's credibility as to subjective symptoms must be reevaluated on remand.

The ALJ's conclusion that Dr. Vazquez' course of treatment has not been consistent with what one would "expect" if Plaintiff were truly disabled constitutes a lay opinion which does not appear to be supported by expert opinion, such as might have been provided by a testifying medical expert. Further, the ALJ's reliance upon the inconsistency between Dr. Vazquez' functional assessment and Plaintiff's "admitted activities of daily living" is not an appropriate credibility assessment factor, because, as this Court has noted in its discussion of the first issue, the ALJ's assessment of Plaintiff's activities of daily living appears to be inconsistent with the actual evidence in the record.

The Court need not devote substantial time to assessing Plaintiff's third issue, which questions whether the ALJ erred in determining her residual functional capacity ("RFC"), because the ALJ's determination of Plaintiff's RFC was based in part upon his

evaluation of Plaintiff's credibility, in addition to the depreciated credibility assessment accorded to Plaintiff's treating physicians. Since these matters must be evaluated <u>de</u> <u>novo</u> on remand, similarly, Plaintiff's RFC must be determined <u>de</u> <u>novo</u> after an evaluation of the evidence, including the opinions of Plaintiff's treating physicians and an evaluation of Plaintiff's credibility as to her subjective symptoms.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: July 29, 2014                           /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE